[No. 4367. Decided April 14, 1903.]

ALICE McBRIDE, *Appellant,* v. JOHN McGINLEY, *Respondent.*

DEFAULT JUDGMENT — VACATION — DISCRETION OF COURT.

The vacation of a default judgment upon a showing by the party defaulted that he relied on a settlement with plaintiff made out of court is a matter properly within the discretion of the trial court.

WORK AND LABOR — SERVICES BY MEMBER OF FAMILY — CONTRACT FOR REMUNERATION — SUFFICIENCY OF EVIDENCE.

In an action by a sister to recover the value of services as housekeeper for a brother during a period of nine years, it was not error to direct a verdict for defendant, where it appeared that plaintiff, after the death of her husband, came with her daughter to live at the home of her brother and keep house for him, there being no agreement or understanding as to any charge for services, and nothing in the conduct of the parties to imply a contract other than one for maintenance.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*James Hopkins,* for appellant.

*P. F. Quinn,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The complaint in this action, omitting the formal parts, is as follows:

"1. The plaintiff alleges that in the month of April, 1892, she commenced work for the defendant, at his instance and request as housekeeper and continued in his employment for the period of nine years, for which the defendant promised to pay her, on demand, such sum as they were reasonably worth.

2. That such services were reasonably worth the sum of twenty-two hundred dollars and on the 4th day of October, 1901, the plaintiff demanded of the defendant payment of said sum.

3. That no part of the same has been paid except the sum of two hundred dollars, and that there is now due from the defendant to the plaintiff thereon the sum of two thousand dollars with interest from May 1, 1901.

Wherefore plaintiff prays judgment against the defendant for two thousand dollars, together with interest and costs."

The defendant not answering within the time required by law, a default judgment was taken against him. Subsequently, the default judgment was vacated on an application supported by affidavits showing that defendant had not answered because he relied upon a settlement made with plaintiff after the commencement of the action, wherein, for the sum of $300 paid to the plaintiff, she waived further demand, and agreed to dismiss the action. The vacation of the judgment is the first error assigned by the appellant. But we think, in consideration of the facts shown by the affidavits, which are not disputed, that the court did not abuse its discretion in vacating the judg-

ment. The defendant answered, denying generally every allegation of the complaint, and alleging affirmatively that in July, 1891, he was informed by the plaintiff, who was then living in Philadelphia, that her husband had died, and she was in straitened circumstances; that she requested him to send her money, and that in response he did send her $50, and offered to make provision for herself and child, a daughter about eleven years old; that the plaintiff afterwards informed him that, if he would forward her the necessary money to defray the expenses of herself and child from her home in Pennsylvania, she would come to the state of Washington, and live with him, and take care of him and his household; that she subsequently did come under such arrangement, with her child, and that since said time he had supported and cared for plaintiff and her child at a cost to him of $2,455.85; that in the year 1900 the plaintiff decided to quit his residence, whereupon he gave her the sum of $200; that subsequently, and after the bringing of the action by plaintiff, he had a settlement with her, wherein she accepted the sum of $300 in full satisfaction of all claims against him, and agreed to the dismissal of the case without costs to him. Upon these issues the case went to trial, and, after the introduction of plaintiff's evidence, the court entertained a motion to direct a verdict for the defendant. Judgment was entered in accordance with the motion, and from that judgment this appeal is prosecuted. The second and only other assignment is that the court erred in directing a verdict for the defendant.

The following is all of the direct testimony of the plaintiff:

"Q. Mrs. McBride, you are the plaintiff in this case, are you not; the party bringing this action against the

defendant, Mr. McGinley? A. Yes, sir. Q. State Mrs. McBride—tell those gentlemen there how you happened to come to Mr. McGinley's place; tell what transpired to bring you to the farm. A. Well, he sent the money for me to come. Q. Where were you living when he sent you that money? A. In Philadelphia. Q. What did he say with reference to providing you with a home? A. Well, he said he thought it was better that we should come to him than stay there alone. Q. Did he write to you with reference to coming just prior to the death of your husband? A. Yes, sir. Q. Now, do you remember what he wrote at that time? (Objection. Sustained.) Q. Well, what time did you come to reside at his place; what time did you come to the McGinley ranch? A. In 1892, I guess. Q. In 1892—what time of the year? A. It was in the spring, along in April. Q. How long did you remain there? A. Remained there nine years. Q. Now, tell these gentlemen what you received for that service prior to leaving the place? A. I didn't come for service; I came to stay with him all the rest of my days. Q. Now, then, how did you happen to leave. A. I happened to leave because I had to leave. Q. Tell the jury. A. Well, he gave me $200 and told me to go wherever I liked now. Q. Did you have any talk prior to that time? A. I never had a word with him. Q. When was this he gave you $200 and told you to go? A. In May, I think. Q. In 1901? A. Yes, sir. Q. What were your duties while you remained on the farm, Mrs. McBride? A. Oh, just housekeeping. Q. You had some cows? A. Yes, sir. Q. Some chickens too, and had butter and eggs to sell? A. Yes, sir. Q. Who took care of the cows and chickens and made the butter? A. There was only the three of us, and we all took care of them. Q. Where did the proceeds—the money go? A. Oh, it went for the needs of the house and clothes for us; if any went to loss I don't know of it. Q. Now, prior to the time he handed you this $200 and told you to go, how much had he paid you from the time you came to live on his place? A. I never received any money; he never paid anything

but the $200.   Oh, yes, he did; I received $5 one time. Q.   During that time did he buy your clothes   A.   He didn't have to buy them; he allowed ourselves to buy whatever we got; he didn't care."

The cross-examination did not tend in any way to strengthen her case, and there was no other testimony pertinent to the main issue.   So that it can be clearly seen that there was no testimony tending in the slightest degree to support the allegations of the complaint in relation to the contract pleaded therein.   On the contrary, it affirmatively appears from the plaintiff's testimony that from the time she came to live with her brother up to the time she left there was no intention on her part to make any charge for services rendered; but that, if there was any contract, it was a contract for maintenance, and that she had received. There being no testimony which would support a verdict, no error was committed in instructing a verdict for defendant.

Affirmed.

FULLERTON, C. J., and ANDERS and MOUNT, JJ., concur.