[No. 7193. Decided September 29, 1908.]

GRACE DEATHERAGE PELTON, *Respondent*, v. SUSIE M. SMITH, *as Administratrix etc., Appellant*.[1]

WORK AND LABOR—SERVICES IN FAMILY RELATION—AGREEMENT TO PAY—EVIDENCE—SUFFICIENCY. It is not necessary to prove the terms of a direct and positive contract for services performed between parties sustaining a family relationship, and there is sufficient evidence of an agreement to pay for services to sustain a verdict for the plaintiff, where it appears that the plaintiff had lived with the defendant as a child, attending school, but left his family, and thereafter the defendant approached the plaintiff's father offering to complete her education, make her a beneficiary in a life insurance policy and a general heir of his estate, besides boarding and clothing her, if she would return and work for him as housekeeper, bookkeeper, and nurse, that defendant was referred to plaintiff, who had attained majority, who did return and faithfully performed the services mentioned, taking up all her time for five years, without other compensa-

[1]Reported in 97 Pac. 460.

tion than that mentioned, that defendant made her a beneficiary in the insurance policy for a time, and that at the end of five years she left him to be married, with his consent.

EXECUTORS AND ADMINISTRATORS — CLAIMS — WORK AND LABOR — AGREEMENT TO PAY BY WILL.—ACTIONS—QUANTUM MERUIT. Where services are performed for another under a contract for compensation to be made by will or otherwise upon the death of the employer, who dies without making provision therefor, an action on *quantum meruit* lies against the estate.

SAME—INTEREST—SERVICES—AGREEMENT TO PAY BY WILL. In an action against an estate upon a *quantum meruit* for services rendered under a contract whereby the employer was to make provision therefor on his death, he having failed to do so, interest is recoverable only from the time of his death, and not from the time the employment ceased.

APPEAL—DECISION. Error in instructions as to the date from which interest was to be computed does not require a new trial, where the verdict was for a specific sum and interest, but interest for the proper time will be directed on remanding the case.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered May 16, 1907, upon the verdict of a jury rendered in favor of the plaintiff, after a trial on the merits, in an action on contract, establishing a claim against an estate. Modified.

*Daniel Needham* and *Bailey & Sturdevant,* for appellant.

*Geo. W. Tannahill,* for respondent.

FULLERTON, J.—The appellant is the administratrix of the estate of Dr. A. J. Smith, deceased. The respondent presented a claim against the estate for $3,000 and interest, averring that sum to be due for services performed for Dr. Smith in his lifetime, at his special instance and request, as nurse, bookkeeper and housekeeper, between the dates of February 25, 1898, and February 25, 1903. The claim was rejected by the administratrix, and this suit was instituted to establish the same as a proved claim against his estate.

In her answer, the administratrix denied the performance of the services alleged; and for a first affirmative defense

averred that the respondent, at the time the alleged services were performed, was a member of the family of Dr. Smith, who stood in *loco parentis* to her, and that any services she may have rendered him was rendered in that relation, without any agreement on his part to pay for them, and without expectation on the part of either of them that such services should be paid for. For a second defense, she pleaded an accord and satisfaction between Dr. Smith and respondent, entered into after the performance of the services ceased, in which the respondent accepted certain personal property and certain money in lieu of any claim she might have against Dr. Smith. The action was tried out on these issues to a jury, and resulted in a verdict and judgment against the appellant, establishing the claim as a proved claim against Dr. Smith's estate.

The evidence tended to show that the respondent first entered Dr. Smith's family in 1893, when she was thirteen years old; that she performed such services around the household as a daughter of a family in ordinary circumstances usually performs, and attended school during the school year, finally graduating from the local high school in the year 1898. Shortly after this she left the doctor's home and returned to that of her father.

Dr. Smith conducted a hospital in connection with his medical practice, and the respondent had shown proficiency as a hospital nurse. He was desirous of having her continue to reside with him, and to that end approached her father and made a proposition to him concerning his daughter's future as an inducement to have her return. The respondent had then reached the age of majority, and the father, without indicating an acceptance of the terms offered, referred the doctor to the respondent. Shortly thereafter he approached the respondent, with the result that she again entered into his service, and continued therein as his housekeeper, bookkeeper, and nurse until sometime in 1903, when she married with the doctor's consent, and left his home for a home of her own.

Dr. Smith died a few months thereafter. The claim presented against his estate was for services rendered during the time she resided in his household after reentering it in 1898.

That the services were faithfully performed and of the value claimed for them, the record abundantly shows. Indeed, at times the respondent's duties were most arduous, leaving no respite other than a few hours for sleep out of the twenty-four, and consisting of the most servile drudgery. So fully was this part of the case proven that but little effort was made to combat it, the defense directing its effort to show that the services were rendered while the doctor and the respondent sustained the relation of parent and child, without promise of remuneration on the one side or expectation of receiving it on the other, and to the second defense, namely, that such pecuniary differences as did exist between them were mutually settled during the doctor's lifetime.

The evidence as to the agreement between the doctor and the respondent, made at the time she entered his household the second time, is, from necessity, indirect and circumstantial. It seems not to have been overheard by any third person, and the respondent could not testify concerning it because of the statute. Its nature, however, is clearly indicated by the indirect and circumstantial evidence. The father testifies that, at the time the doctor spoke to him seeking to induce the daughter to return, he proposed to complete her education along particular lines, to make her the beneficiary of a certain life insurance policy he held, and a general heir of his estate, and also board and clothe her according to her station in life. It was shown that, after the respondent's return to his household, he did send her away to school for a year while she perfected herself in stenography and bookkeeping; that he supplied her with her board and clothing, and did have her named for a time as the beneficiary in a life insurance policy which he held in a beneficiary society. Whether he ever executed a will in her favor is not shown, but after his death it was found that his property was

deviscd to his second wife, whom he had married not many months preceding his death, and that he had also made the wife the beneficiary of the insurance policy mentioned, thus cutting off the respondent entirely from participation in his estate.

The appellant contends that, for services rendered by a child to the parent, or by one to another who stands in the place of a parent, no recovery can be had unless the services were rendered on an express contract between them to the effect that the one performing the services should be compensated for them, and that, in this case, the evidence shows that the respondent was received into the family of Dr. Smith as his child and there is no sufficient proof of a contract on his part to pay for the services she rendered while occupying that relation. In *Morrissey v. Faucett*, 28 Wash. 52, 68 Pac. 352, we stated the rule governing in cases of this kind in the following language:

"It is a rule universally recognized that, when the services are rendered by one who is a member of the family of the employer, the law will not imply a contract to pay for the services from the mere fact that they have been rendered upon the one hand and benefits thereof received upon the other, as in the case of strangers. This is also held to be the rule when there is no actual blood relationship existing between the parties, provided they sustain to each other the ordinary relations of members of the same family. It has been held, however, that when the family relationship exists it is not necessary to prove the terms of a direct and positive contract, but that proof may be made of words, acts, and conduct of the parties, and circumstances from which the inference may follow that there was an understanding that the services were not to be rendered gratuitously; that when such is the case there is a contract upon which the value of the services can be recovered, and it is for the jury to say, from all the conduct of the parties and from the circumstances in evidence, whether there was in fact such an understanding or agreement."

See, also, *Hodge v. Hodge*, 47 Wash. 196, 91 Pac. 764; *McBride v. McGinley*, 31 Wash. 573, 72 Pac. 105.

Tested by this rule, and conceding that the burden was upon the respondent to establish the contract by a preponderance of the evidence, we think she made a case on which she was entitled to the judgment of the jury. Clearly there was evidence from which the jury could find that there was an understanding or agreement between Dr. Smith and the respondent that she should receive compensation for her services rendered after she returned to the doctor's household in 1898. The evidence leads, it is true, to the conclusion that the compensation was to be made in the will of the doctor, and from certain of his life insurance, but this does not bar the respondent from enforcing her claim. The rule is that where personal services are performed by one person for another under a contract or mutual understanding that compensation therefor is to be made in the will of the party receiving the benefit, or by some instrument to become absolute upon his death, and the party dies without making such provision, an action will lie against his estate to recover the reasonable value of the services. *Snowden v. Clemons*, 5 Colo. App. 251, 38 Pac. 475; *Miller v. Lash*, 85 N. C. 51, 39 Am. Rep. 678; *Riddle v. Backus*, 38 Iowa 81; *McGarvy v. Roods*, 73 Iowa 363, 35 N. W. 488; *Stewart v. Small*, 11 Ind. App. 100; *Bell v. Hewitt's Ex'rs.*, 24 Ind. 280; *Snyder v. Caster's Adm'r.*, 4 Yeates 353. So here, since the jury found in the respondent's favor on the question whether or not the services were gratuitous, she was entitled to recover on a *quantum meruit;* she need not predicate her action on a breach of the agreement.

The question whether there had been an accord and satisfaction of the respondent's claim between the respondent and Dr. Smith was properly left to the determination of the jury, and the verdict thereon is conclusive in this court.

The court allowed a recovery of interest from the time the appellant ceased working for Dr. Smith. This was error. The respondent's claim did not mature until Smith's death. At that time she had her election either to sue his estate on a

*quantum meruit* or in damages for a breach of the agreement, and her right to interest would not accrue until she made her election. The election was made when she presented her claim to the administratrix for the reasonable value of the services, and interest should have been allowed only from that date. This does not, however, require a retrial of the action, as the amount to be allowed as interest is merely for mathematical computation. The record makes it clear that the jury returned a verdict for $3,000, and interest at the legal rate from the date fixed by the court in its charge as the time from which interest could be computed. That date was February 25, 1903, but as the claim was presented to the administratrix on February 11, 1905, interest should have been allowed only from that time.

For the error last mentioned, the judgment is reversed, and remanded with instructions to enter a judgment in favor of the respondent for $3,000, and interest from February 11, 1905, at 6 per cent per annum.

RUDKIN, ROOT, and CROW, JJ., concur.

HADLEY, C. J., and MOUNT, J., took no part.