[No. 15302. Department Two. January 29, 1920.]

JAMES T. HENDRYX et al., Appellants, v. R. W. TURNER, Respondent.[1]

WORK AND LABOR (4)—IMPLIED CONTRACT—RELATIONSHIP OF PARTIES—BROTHER-IN-LAW. Where a husband and wife reared an infant son of the wife's deceased sister at the instance of the brother-in-law, the relationship of the parties is not such as to rebut the presumption of an implied contract to pay for the services, and does not bar recovery without any express contract to pay, in the absence of any family relation between the parties involved.

SAME (11)—PLEADING—ISSUES, PROOF AND VARIANCE. A complaint alleging the performance of special services at the special instance and request of defendant and that the reasonable value was a certain sum, states a cause of action on quantum meruit or implied contract, notwithstanding an allegation that defendant agreed to pay such reasonable compensation, which amounts only to a conclusion of law, and authorizes recovery without proof of an express contract.

[1]Reported in 187 Pac. 372.

SAME (4, 14) — IMPLIED CONTRACT—EVIDENCE—SUFFICIENCY. An action on *quantum meruit* for rearing a child is sustained by plaintiff's evidence that they never intended to make any charge because the child had been given to them to rear as their own, until, in habeas corpus proceedings by the father, the child had been taken from them on the father's evidence that the child had not been given to them; since eliminating evidence of such gift as inapplicable, the law implies a promise to pay from the other established facts.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered November 30, 1918, upon granting a nonsuit, dismissing an action on contract, tried to the court. Reversed.

*John C. McCue* and *G. L. Davis,* for appellants.

*W. W. Sparks* and *McMaster, Hall & Drowley,* for respondent.

BRIDGES, J.—By this action appellants, plaintiffs below, sought to recover of the respondent compensation for the maintenance and care of Charles R. Turner, the son of the respondent. On December 12, 1911, the appellants and respondent and his wife, since deceased, were neighbors, residing in the state of Washington. Mrs. Turner and Mrs. Hendryx were devoted sisters. On the day above mentioned, the child Charles R. Turner was born by Mrs. Turner, who died within two or three hours thereafter. Mrs. Hendryx was present at the birth and the death. At that time the respondent, father of the child, requested the appellants to take the child and care for him, which the appellants at once proceeded to do. They kept the child until January, 1918. Shortly prior to that time the respondent, who had remarried, desired, and demanded of the appellants, the possession and custody of the child, but the appellants refused to surrender him. They contended that there was an express agreement between them and the respondent, made at the

22—109 WASH.

time the child was given to them, that he was to become and remain their own child in consideration of his upbringing by them. A few days after this demand, the respondent brought an action of habeas corpus against the appellants, in the circuit court of the state of Oregon. In that proceeding the appellants seem to have defended on the ground that the child had been given to them and that he was their child. The respondent denied that the child had been given to the appellants as their own and contended that he had merely been temporarily placed in their care and custody. This case went to the supreme court of the state of Oregon, where it was held that the child had never been given to the appellants in such manner as to make him their own, and they were required and ordered to surrender possession of him into the custody of his father, the respondent. See *Turner v. Hendryx,* 86 Ore. 590, 167 Pac. 1019, 169 Pac. 109. In that action the appellants testified that they had never demanded and had never expected any compensation from respondent because they considered the child to be their own.

After the child was taken from them by virtue of the decree of the Oregon supreme court, appellants instituted this action in this state for the purpose of getting compensation for their services and expenses incurred. Their complaint alleged that appellants, on December 12, 1911, at the special instance and request of the respondent, took the child into their possession and continued thereafter to care for, maintain and support him until the 12th day of January, 1918. The third paragraph of the complaint alleged that ''defendant agreed to pay to plaintiffs for their said work, labor and services as aforesaid the reasonable value thereof.'' The reasonable value was alleged to be $2,735. The answer denied most of the material alle-

gations of the complaint and affirmatively pleaded the habeas corpus proceeding in the courts of Oregon. The testimony here of Mrs. Hendryx, the appellants' chief witness, was in entire accord with her testimony in the habeas corpus proceeding. She said that, on the evening her sister died, Turner told her that he would have to leave the child with her; that he could not take care of him, and that she told Turner she was willing to take the child and raise him, providing he was given to her as her own child, and that the respondent agreed to those terms; that, in accordance with this arrangement, she did take the child and rear him as one of her own family for the period heretofore mentioned. At that time she and her husband lived in Washington, but later removed to Portland, Oregon. She testified that there never was any agreement for, or talk concerning, compensation until shortly before the institution of the habeas corpus proceeding; that, up to that time, she had no intention or expectation of making any charge for her services because she considered the child to be her own. There was ample testimony showing the reasonable value of her services to the respondent's child. At the close of appellants' case, the respondent moved for a nonsuit, which was granted, and judgment was thereafter entered dismissing the action, from which judgment this appeal is taken.

The trial court seems to have granted the nonsuit on two grounds; first, that the testimony showed that the parties to this action were related and were of one family, and therefore the law would not imply any agreement to pay compensation; and second, because the complaint was rested upon an express contract to pay, and, since there was no testimony in support of an express contract, there could be no recovery.

Generally speaking, where one performs services for another at that other's special instance and request, and there is no agreement with reference to compensation, the law will imply an agreement on the part of the other to pay what the services are reasonably worth. This rule, of course, is based upon the theory that human experience teaches that, under such circumstances, the one expects to receive and the other expects to pay, notwithstanding nothing is said about compensation. But this rule is not universal. Where the relationship of the parties is so close and intimate as to rebut the presumption of an implied contract to pay, there can be no recovery except upon an express agreement. Where one renders services as a member of the family of the person served, receiving support therein, a presumption of law arises that such services are gratuitous, and to authorize a recovery therefor an express promise of the party served must be shown, or such facts and circumstances as will authorize a finding that the services were rendered in the expectation by the one of receiving and by the other of making compensation therefor. There is a long line of decisions in support of this doctrine, but it is not necessary to go outside of the decisions of this court to find such support. In the case of *Morrissey v. Faucett*, 28 Wash. 52, 68 Pac. 352, this court said:

"It is a rule universally recognized that, when the services are rendered by one who is a member of the family of the employer, the law will not imply a contract to pay for the services from the mere fact that they have been rendered upon the one hand and benefits thereof received upon the other, as in the case of strangers. This is also held to be the rule when there is no actual blood relationship existing between the parties, provided they sustain to each other the ordinary relations of members of the same family."

To the same effect see the following: *McBride v. McGinley,* 31 Wash. 573, 72 Pac. 105; *Hodge v. Hodge,* 47 Wash. 196, 91 Pac. 764, 11 L. R. A. (N. S.) 873; *Pelton v. Smith,* 50 Wash. 549, 97 Pac. 460. ·

The testimony in this case is clearly insufficient to authorize any recovery based upon an express agreement, and if appellants recover at all they must do so upon an implied agreement. The respondent contends that the relationship of the parties to this action is such as to bring them within the exception to the general rule as recognized by the authorities above cited, and for that reason the appellants cannot recover on the theory of an implied contract. We cannot agree with the respondent's contention in this regard. There is no blood relationship between either of the appellants and respondent. They did not live together as one family, but, on the contrary, there was an entire absence of family relationship. If this had been a controversy between the appellants and the child in question, whereby the appellants sought to recover of the child compensation for their care and custody of him, or whereby the child had sought to recover of appellants compensation for his services rendered to them, a very different question would arise. All, or practically all, of the cases cited by respondent are cases of the character supposed. The case of *Wyley v. Bull,* 41 Kan. 206, 20 Pac. 855, was one where the plaintiff, a minor, but not a relative of defendant, residing with the defendant as his son and as one of his family, sought to recover compensation for his services. The case of *Price v. Price's Ex'r,* 19 Ky. Law 211, 39 S. W. 429, was one where a sister sought to recover compensation from the estate of her deceased brother for services rendered by her. The case of *James v. Gillen,* 3 Ind. App. 472, 30 N. E. 7, was one where a niece entered the family of the decedent and there lived with

him as his own child and as a part of the family, and she instituted suit to recover compensation for services performed by her. Most, if not all, of the other cases cited by respondent are like those we have noticed. It should at once be manifest, we think, that there is a very wide difference between the facts of those cases and the facts of the case at bar.

The respondent further insists that appellants' action is based upon express contract, and for that reason there cannot be any recovery on implied contract. While there are some expressions in the complaint that would tend to indicate that it was the intention to plead an express contract, yet, taking that instrument as a whole, we are satisfied that it was the intention to rely upon an implied contract. The complaint alleged, in substance, that the appellants performed the services at the special instance and request of the respondent and that the reasonable value of such services was a certain sum. These are the usual allegations contained in a complaint based upon *quantum meruit*. The allegation to the effect that respondent agreed to pay such reasonable compensation is nothing more than a conclusion of law, and, of course, surplusage.

At page 587, 6 R. C. L., we find the following:

"It is said that the only difference between an express contract and an implied contract is that in the former all the terms and conditions are expressed between the parties, while in the latter some one or more of the terms and conditions are implied by law from the conduct of the parties."

The following rule is laid down in 23 Am. & Eng. Ency. (2d ed.), 534:

"Where a person employs another to do work for him, without any agreement as to compensation, the law implies a promise to pay for the services as much

as they may deserve or merit. In such case the plaintiff may suggest in his declaration that the defendant promised to pay him as much as he reasonably deserved, and then aver that his trouble was worth such a sum of money, which the defendant has omitted to pay. This is called an assumpsit on a *quantum meruit.*"

See, also, *Jackson v. Buice,* 132 Ga. 51, 63 S. E. 823; *Forester v. Forester,* 10 Ind. App. 680, 38 N. E. 426, 2 R. C. L. 747; *Bertelson v. Hoffman,* 35 Wash. 459, 77 Pac. 801; *Thayer v. Harbican,* 70 Wash. 278, 126 Pac. 625; *Holm v. Chicago, Milwaukee & P. S. R. Co.,* 59 Wash. 293, 109 Pac. 799.

The respondent contends that, even if the complaint is based upon an implied contract, the testimony negatives any implied promise to pay. In discussing this feature of the case, it is necessary to remember that appellants testified that, up to the time the child was taken away from them, they had no intention of making any charge, and that at no time had there been any talk concerning compensation, because appellants always considered the child to be their own. But the supreme court of Oregon, in the habeas corpus case cited, held, in substance, that the child did not belong to the appellants, and that there never was any legal or binding contract between appellants and respondent whereby the latter legally surrendered his child to the former. We must, therefore, eliminate from this case, as inapplicable thereto, the appellants' testimony to the effect that they were given the child. With this testimony eliminated, we have nothing left but the bare fact that appellants have cared for the child all these years at the request of respondent. Based upon that testimony, the law will imply a promise on the part of respondent to pay the reasonable value of such services.

Our conclusion is that the complaint was based upon an implied contract, and that the appellants offered sufficient testimony to require their case to be submitted to the jury, and that the court was in error in granting a nonsuit. Judgment is reversed and the case remanded with instructions to proceed with the trial in accordance herewith.

HOLCOMB, C. J., TOLMAN, FULLERTON, and MOUNT, JJ., concur.