[No. 18808.  Department Two.  March 3, 1925.]

WILLIAM ALLERTON, *Appellant,* v. H. ALLERTON, *Individually and as Administrator of the Estate of Theodore Allerton, Deceased, et all., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS (81)—CLAIMS—PRESENTATION—VERIFICATION—SUFFICIENCY. A clerical error in the verification of a claim against an estate in referring to the amount as nine hundred and odd dollars instead of nineteen hundred does not vitiate the claim, especially where attention was not directed thereto until after the time for filing claims had expired.

WORK AND LABOR (4)—IMPLIED CONTRACT—SERVICES BETWEEN PERSONS IN FAMILY RELATION—RECIPROCAL BENEFITS. A promise by decedent to pay for board, lodging and care may be implied, without any express agreement, where decedent, an old man suffering from disease, was taken into the home of his nephew, who furnished him board, lodging and care until he died, without the receipt of any reciprocal benefits.

SAME (15)—VALUE OF SERVICES—EVIDENCE—SUFFICIENCY. A claim against an estate for services at the rate of fifty dollars a month is sustained by proof that the services were worth that sum on the average, for the time claimed, although of less value for some of the months.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 22, 1924, upon findings in favor of the defendants, in an action contesting the allowance of a claim against an estate, tried to the court.  Affirmed.

*Poe, Falknor, Falknor & Emory,* for appellant.

*Karr & Gregory* and *H. G. Sutton,* for respondents.

HOLCOMB, J.—Theodore Allerton died in Seattle on September 7, 1923, leaving personal property in this state of the approximate value of $3,500, subject to administration.  He left as his only heir at law appellant,

[1]Reported in 233 Pac. 632.

who resides at New Orleans, Louisiana. Immediately after his death, H. Allerton of Seattle, a nephew of the decedent, applied for letters of administration, which were thereafter issued to him. On October 6, 1923, first notice to creditors was published. On December 14, 1923, the nephew, in his individual capacity, filed his claim against the estate in the sum of $1,953.65, the largest item of which is for board, room, laundry and care of decedent from September 7, 1920, to September 7, 1923, at $50 per month, totalling $1,800. The remainder of his claim was for other expenses not here contested. This claim was presented by him, as was necessary under the law, to the judge of the superior court sitting in probate, on December 14, 1923, and upon an *ex parte* hearing thereon was allowed.

The claim was as follows:
(Title and Caption)
"The Estate of Theodore Allerton, deceased,
"To H. Allerton, Dr.

To board, room, laundry and care from September 7, 1920 to September 7, 1923, at $50
per month .............................$1,800.00
Paid for ambulance .......................    5.00
Paid Minor Hospital ......................   57.65
Paid St. Luke's Hospital..................   40.00
Paid for night nurse......................   11.00
Paid Dr. Janson, physician................   40.00
                                          ──────────
                                           $1,953.65
"*By*
     "Balance due claimant...............$1,953.65"
"State of Washington ⎫
                      ⎬ ss
"County of King       ⎭

"H. Allerton being first duly sworn deposes and says that he is the above-named claimant; that the foregoing claim amounting to Nine—— Hundred Fifty-three and 65-100 —— is just, true and correct, and said amount is justly due said claimant from the estate

of said deceased; that no payments have been made thereon except as hereinbefore stated; that there are no offsets thereto to the knowledge of claimant.

"H. Allerton."

"Subscribed and sworn to before me this 14 day of December, A. D. 1923.

"G. W. Gregory, Notary Public in and for the State of Washington, residing at Seattle."

It will be observed that in the verification of the foregoing claim it is written "Nine Hundred Fifty-three and 65-100," instead of "Nineteen Hundred Fifty-three and 65-100 Dollars," as it was stated in the body of the claim.

On March 6, 1924, within the six months' period within which creditors may present claims, appellant filed his petition disputing the claim, and asking to have the formal allowance thereof vacated and set aside. Respondent answered the petition, and the matter came on for trial on April 29, 1924, and on May 22, 1924, the trial court entered findings of fact, conclusions of law, and an order establishing the claim as a valid claim against the estate to be paid in the ordinary course of administration.

We may as well dispose of appellant's second contention first, since it is directed to the sufficiency of the verification. It is contended that the verification is fatally defective under the 1917 probate law, § 108, p. 673 [Rem. Comp. Stat., § 1478], which provides:

"Every claim served and filed as above provided shall be supported by the affidavit of the claimant that the amount is justly due, that no payments have been made thereon, and that there are no offsets to the same to the knowledge of the claimant." Laws of 1917, p. 673.

Appellant relies upon *Dillabough v. Brady,* 115 Wash. 76, 196 Pac. 627, which held that a claim was fatally defective where the verification failed to state

that there were no offsets thereto. That case does not apply here for two reasons—first, the claim there was set up in the complaint of claimant and was demurred to in the lower court, and it was held that the claim was fatally defective and could not be amended after the six months' period had elapsed; and second, in that case there was no statement in the claim that there were no offsets thereto, as there is here.

In this case the statement of the claim, after stating the amount claimed, also sets forth that the balance due claimant is $1,953.65. The verification, which omitted the "teen," is manifestly a clerical error. This is also made more apparent by the fact that appellant, in his petition to set aside the claim, alleged that the claim was for a total sum of $1,953.65, and denied that the $1,800 portion of the claim was properly chargeable against the estate. In fact, no one seems to have discover this clerical error in the verification until after the trial and after judgment had been entered. While the statute is mandatory, as was held in the *Dillabough* case, it does not mean that mere clerical errors will render the verification fatally defective, or that one can contest the claim and disregard the defective verification until after the time has expired to file a perfectly valid verification and then take advantage of it. Appellant's contention having been made for the first time on appeal should not be sustained, and otherwise it has no merit.

No questions of fact are presented on this appeal. The matters before us are on the transcript alone, and appellant states that he has no quarrel with the facts as found by the trial court, but that the facts so found do not justify the conclusions of law and the judgment. The facts as found by the trial court, without setting them out in full, are in substance as follows:

That deceased left as his only heir at law William Allerton, a son, living in New Orleans. For some time prior to his death deceased was in ill health, and advanced in years. Although he performed some work during the last several years of his life, he required constant care and attention, and was suffering, and had suffered for a long time prior to his death, from cancer. For three years prior to his death, from September 7, 1920, to September 7, 1923, claimant, a nephew of deceased, and his wife, cared for deceased, did his laundry, attended and waited on him, and during the greater part of that time furnished him room, board, lodging, personal care, nursing, and other attention, all of which was reasonably worth the sum of at least $50 per month during all of that three-year period, and that the services were as a whole reasonably worth at least $1,800. That the claim in the sum of $1,953.65 was presented by claimant within six months from the date of the first publication of the notice to creditors, and was allowed by the court; that the services were reasonably worth that sum, and the claim was in all respects regular, proper, and reasonable, and should be allowed. The court concluded, as a matter of law, that an order should be entered allowing and establishing the claim of claimant against the estate in the full sum of $1,953.65 as a general claim payable in due course of administration. Judgment was entered accordingly.

Appellant contends, first, that there is no express promise to pay for the services rendered by claimant and his wife, either alleged by claimant or found by the court, and that the relationship of the parties is such that no promise can be implied.

Our cases are cited to the effect that when there is a blood relationship between the promisee and the promisor there must be an express promise, either oral

or written, to support the claim; citing *Morrissey v. Faucett,* 28 Wash. 52, 68 Pac. 352; *McBride v. McGinley,* 31 Wash. 573, 72 Pac. 105; *Hodge v. Hodge,* 47 Wash. 196, 91 Pac. 764, 11 L. R. A. (N. S.) 873; *Pelton v. Smith,* 50 Wash. 459, 97 Pac. 460; *Thomas v. Thomas,* 105 Wash. 127, 177 Pac. 680; *Lyons v. McElroy,* 104 Wash. 481, 177 Pac. 312; *Bolling v. Bolling's Adm'r,* 146 Ky. 313, 142 S. W. 387; *Zuhn v. Horst,* 100 Wash. 359, 170 Pac. 1033.

It is true we said in *Morrissey v. Faucett, supra,* and followed it repeatedly in the subsequent cases cited, that:

"It is a rule universally recognized that, when the services are rendered by one who is a member of the family of the employer, the law will not imply a contract to pay for the services from the mere fact that they have been rendered upon the one hand and benefits thereof received upon the other, as in the case of strangers. This is also held to be the rule when there is no actual blood relationship existing between the parties, provided they sustain to each other the ordinary relations of members of the same family."

In every one of the cases cited by appellant the claimant had lived in the house of the other party and was receiving board, lodging and other benefits as a member of the family.

But we held in *Lyons v. McElroy, supra,* where claimant was a nephew of decedent, that an instruction in such a case to the effect that an agreement to pay for the services performed need not be in any form of written or oral statements, but may be implied from the conduct of the parties, was correct.

The situation in this case is the reverse of the situation and conditions existing in the cases relied upon by appellant, and the implication of law is, therefore, the reverse.

The rule is stated in 28 R. C. L., p. 681, § 15, that, "Frequently when there is no reciprocity of benefits a contract may be implied." And on pages 682 and 683, § 17, R. C. L., it is stated that:

"The general principle is not disputed, that the presumption of an intention not to demand pecuniary compensation for services rendered is stronger or weaker according to the proximity or remoteness of the relationship. In the practical application of this principle, the courts have proceeded on the theory that, in any case where a relationship more remote than that of parent and child is involved, something more than the relationship itself must be shown in order to overcome the effect of the primary implication that a person who accepts valuable services does so on the understanding that they are to be paid for. Accordingly some courts have categorically ruled that a blood relationship more remote than that of parent and child is not sufficient of itself to rebut the implication of a promise to pay. However, a more common illustration of the principle is found in the cases holding that no presumption unfavorable to the claim will be entertained unless it appears that at the time the services were rendered the claimant was living as a member of the family of the other party."

And further, on page 684, § 19, the following appears:

"And where there is a lack of mutuality in the benefits received, the rule will not apply and a promise to pay will be implied."

It is also stated on page 683, § 18:

"Where the relation is that of uncle and nephew, without more, the ordinary rule obtains that the law presumes that the services are to be paid for;"

Here, as found, claimant, the nephew, took his uncle into his own home and took care of him. Under the condition of the uncle, as shown, the services rendered

were undoubtedly very necessary, important and valuable. There were no reciprocal benefits between them. Claimant gave all the services and the uncle gave nothing. There was no legal duty on the part of the nephew to give the services.

This case is the direct opposite of all the cases cited by appellant, and while all those cases were, in our minds, correctly decided on the facts shown in them, this case was also correctly decided by the trial court. There being no implication of reciprocal benefits from the uncle to the nephew, a promise may be implied by law, which if otherwise, the contrary would be true.

There is no merit in the contention of appellant that the matter should be remanded for a new trial because the record is conclusive that the amount awarded respondent was excessive. This is based on a portion of a paragraph of the affirmative answer of respondent to the petition of appellant, which, among other things, stated:

"The services performed during the earlier part of the said period may in some instances not have been reasonably worth the sum of fifty dollars per month, but that the total amount of said claim, to-wit: eighteen hundred dollars, is in fact less than the reasonable value of the services performed by said claimant and his wife for the deceased during said period. That instead of placing a value for each month during the three years for the services so performed, said claimant averaged the same up and put his claim in on the basis of fifty dollars per month for the entire period."

It is asserted that this allegation affirmatively shows that the services were not worth the sum of $50 per month for every month. But it also affirmatively shows that the services were worth more than fifty dollars per month for some of the months, and that they were averaged for the whole period of service, and that

$1,800 *is in fact less* than the reasonable value of the services performed.

The judgment is right and it is affirmed.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and FULLER-TON, JJ., concur.