[No. 25405. *En Banc.* August 1, 1935.]

ANN JOHNSTON, *Appellant,* v. J. T. JOHNSTON *et al., Respondents,* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Defendant.*[1]

*Geo. H. Mullins,* for appellant.

*W. A. Hubbert* and *Daniel L. Goodman,* for respondents.

BLAKE, J.—The plaintiff is the widow of Jesse Donald Johnston, who was the son of defendants J. T. Johnston and Pearl Johnston. October 18, 1932, the defendant Mutual Life Insurance Company of New York issued a policy on the life of Jesse Johnston, in which plaintiff was named beneficiary. The policy reserved the right in the insured to change the name of

[1] Reported in 47 P. (2d) 1048.

the beneficiary. Exercising this right, the insured, on May 5, 1933, made his father the beneficiary. This change was made without the consent or knowledge of plaintiff.

Jesse Johnston died October 7, 1933. The defendant J. T. Johnston made proof of death. Before payment was made by the insurance company, plaintiff brought this action, laying claim to the proceeds of the policy. The defendant insurance company paid into court the money due under the policy and was dismissed from the action. The cause was tried to the court, which made findings favorable to defendants, and entered judgment dismissing the action. Plaintiff appeals.

The premiums on the policy were payable quarterly. The first premium was paid with community funds, when the policy was issued. It is appellant's contention that the community composed of herself and husband then acquired a vested interest in the policy; that, the policy being community property, her husband could not give it away.

It is well established (1) that property assumes a separate or community character as of the date of its acquisition (*Norman v. Levanhagen,* 142 Wash. 372; 253 Pac. 113) ; (2) that a husband alone cannot make a gift of community property (*Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062). Predicating her argument upon these propositions, appellant assumes the fact to be established that her husband did make a gift of the policy to his father. The court found otherwise. It found that the change of beneficiary was made for an adequate consideration. Under the evidence, we fail to see how the court could have found to the contrary.

The essential facts supporting the finding are these: Jesse Johnston was stricken with influenza in November, 1932. Mastoid complications developed, which necessitated an operation in the latter part of Decem-

ber. When he recovered sufficiently to leave the hospital, he was taken to the home of his parents, where he remained until his death. During much of the time, he was a very sick man. At no time did he recover sufficiently to resume his occupation. In the latter part of January, 1933, appellant, at the invitation of respondents, also came to live with them. She remained until April 26th.

Appellant contends, however, that the support so given and the services so rendered by respondents were gratuitous. It is the general rule that support and services rendered between the members of a family are gratuitous, in the absence of a contract, express or implied, to pay. The theory underlying the presumption is that support given by one is offset by services rendered by the other. The presumption that the support given and the services rendered are gratuitous may be overcome by clear and convincing evidence showing an intention that they were to be paid for in pecuniary recompense. 1 Schouler, Marriage, Divorce, Separation and Domestic Relations (6th ed.), § 806; *Morrissey v. Faucett,* 28 Wash. 52, 68 Pac. 352; *Thompson v. Jackson,* 85 Wash. 330, 148 Pac. 5; *Lyons v. McElroy,* 104 Wash. 481, 177 Pac. 312; *Allerton v. Allerton,* 133 Wash. 260, 233 Pac. 632.

Applying the rule here, it is clear that pecuniary recompense was contemplated by the respondents on the one hand and their son on the other. For, due to his physical condition, the son could make no recompense by way of services. The support and services rendered were wholly on the side of the parents.

On this aspect of the case, the quotation from 28 R. C. L. 681, § 15, used in *Allerton v. Allerton, supra,* is peculiarly pertinent here: "Frequently when there is no reciprocity of benefits a contract may be implied." But we find more than that in this case. The

son acknowledged the pecuniary obligation and manifested his intention of discharging it by transferring to his father the only resource at his disposal. Under the evidence, the court was fully warranted in holding that there was an adequate consideration for the change in the named beneficiary under the policy.

Judgment affirmed.

MILLARD, C. J., MITCHELL, MAIN, TOLMAN, BEALS, and STEINERT, JJ., concur.

GERAGHTY, J., concurs in the result.

HOLCOMB, J. (dissenting)—Ordinarily, the decision of the trial court upon conflicting facts ought to be controlling upon this court. However, this is not an ordinary fact case. It is a question of mixed law and fact.

The majority concede that (1) property assumes a separate or community character as of the date of its acquisition; and (2) that a husband alone cannot make a gift of community property under our statutes and decisions. The majority also concede that the general rule is that support and services rendered by members of a family are gratuitous in the absence of a contract, express or implied, to pay.

The majority then deduces the illogical inference that, owing to the physical condition of the deceased son of respondents and husband of appellant, there was a consideration for the change of the beneficiary in the policy from the wife to respondents because of those services; contrary to a conclusion drawn in the prevailing opinion that a pecuniary recompense was contemplated by respondents on the one hand and their son on the other. Respondent, the father, testified, as shown by the record, that the son offered to make the changes of the beneficiary from his wife to respondents so that, in case anything happened, they could pay the funeral expenses and have something left for their

trouble; that it was purely voluntary on the son's part, and that respondent did not particularly want it.

The record also discloses that, when the bills for the medical expense were presented, they were mailed in the name of the son, Jesse Johnston, and the father presented those bills to appellant for her to pay, which, of course, she was unable to do.

The most conclusive fact against the opinion of the trial court is the testimony of John Bruff, an attorney, who is also a notary, who was obtained by the brother of the deceased to act as notary, who testified in great detail as to his examination of deceased to ascertain his mental condition and the reason why he wished to change his beneficiary in the policy, whether he had been coerced or over-persuaded by his father or mother, which deceased negatived; and when asked for his reasons for making it over to his father and mother alone, the son said that his father and mother raised him, gave him birth, to the exclusion of his wife; that she was not good to him; that she left him, and that his father and mother had been good to him in his sickness, and then stated "I am going to give it to my father." That was purely a gift, based on love and affection.

The above evidence by a competent and entirely disinterested witness almost conclusively establishes a gift without consideration. Parenthetically, it may be stated that appellant had been driven from the home of respondents by unkind treatment on the part of the mother of deceased, who slapped her several times.

Upon the facts in this case, the judgment should be reversed and appellant granted recovery on the policy.

For these reasons, I am compelled to dissent.