[No. 14215.  Department Two.  February 21, 1918.]

SOPHIA ZUHN, *Respondent*, v. C. A. HORST, *as Administrator etc., Appellant.*[1]

APPEAL — NOTICE — PARTIES TO BE SERVED — SURETIES ON PLAINTIFF'S COST BOND—DISMISSAL.  Where plaintiff, on defendant's demand, gave a bond for costs, and secured a verdict, and defendant appealed, the failure of defendant to serve notice of appeal upon the sureties on the cost bond will not work a dismissal of the appeal, where defendant waives all rights against the sureties on the cost bond.

EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—SUFFICIENCY—VARIANCE.  Under a claim against an estate for services rendered to the deceased under oral promises made in 1898 and 1905 in Illinois to compensate for services by providing a home and making a will, it is not admissible to recover upon a promise made in 1909 in Washington to compensate for services by making a will; since the demands are not the same, although made to compensate for the same services.

SAME—CLAIMS—PRESENTATION—OBJECTIONS—SUFFICIENCY.  Where, in an action against an administrator, the complaint was amended to cover a demand at variance with the claim filed against the estate, a challenge to the sufficiency of the evidence to sustain the amended complaint raises the question as to the sufficiency of the claim, in view of the statute making filing of a claim a condition precedent to action.

LIMITATION OF ACTIONS—ACCRUAL—ORAL CONTRACT.  Defendant's oral agreement to support plaintiff and give her a home in return for services is breached upon defendant's moving away without fulfillment, and falls within the three-year statute of limitations for contracts express or implied but not in writing.

SAME—NEW PROMISE—REQUISITES.  A new promise is not sufficient to remove the bar of the statute of limitations against an oral promise for life support, unless it is in writing as required by Rem. Code, § 176; and it is immaterial that there was a sufficient consideration.

Appeal from a judgment of the superior court for Whatcom county, Brawley, J., entered December 29,

[1]Reported in 170 Pac. 1033.

1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*W. J. Griswold* and *Hurlbut & Neal,* for appellant.

*Kellogg & Thompson,* for respondent.

MORRIS, J.—Respondent, mother of the deceased wife of William Neihoff, deceased, brought this action against the administrator of William Neihoff's estate to recover the value of household services rendered the deceased and his family prior to the death of the deceased and his wife. In her complaint, she alleged that the services were rendered at Danville, Illinois, between August, 1898, and December 24, 1905, and were of the reasonable value of $60 per month; that the consideration for such services was an oral promise made by William Neihoff in August, 1898, that he and his wife would provide respondent with a home and suitable support during her life. She further alleged that, shortly after December 24, 1905, the Neihoffs removed to Bellingham, Washington, and that William Neihoff, prior to his departure from Danville, orally promised that he and his wife would make and execute wills and make respondent their beneficiary and heir. Mrs. Neihoff died intestate at Bellingham, in October, 1906. William Neihoff died intestate at Bellingham, in April, 1915. Respondent filed a claim with the administrator for

"services as nurse and housekeeper from August, 1898, to December, 1905, both inclusive, at the rate of $60 per month, amounting to $5,340."

The only evidence in support of the agreement for compensation, claimed to have been made in August, 1898, at the beginning of the services, was that of Mrs. Emma Schultz, a daughter of respondent, who testified as follows:

"He (Mr. Neihoff) told me he had made arrangements with mother to stay there as long as mother lived; that mother was to do the work there and that was going to be her home, and he was going to give her a good home and provide for her; and Mrs. Neihoff said that was what mother wanted. That was what she wanted and she was going to stay there and help them and for this help they were going to give her a good home as long as she lived, and their home was to be her home."

Mrs. Schultz also testified to the second promise made at Danville, Illinois, as follows:

"I said to him 'Supposing you both die, what are you going to do then?' and he said 'We have made that all out, Minnie and I have talked about it, and we are going to make a will before we go away, and we are going to have that all fixed up before we go, and if we both die mother will be well taken care of.'"

During the examination of Mrs. Schultz at the trial, she testified that she visited William Neihoff at Bellingham in August, 1909; that, during this visit, she had a number of conversations with him relative to his making some provision for a settlement of respondent's claim; that William Neihoff then said to her:

" 'I am awfully sick now, the doctor has given me up and I cannot live long. The doctor says I cannot live longer than three months, and I don't want to go to the trouble of borrowing money, and we must make some other arrangement with mother. I know I owe her a great deal; I know she helped me a great deal, and I know I owe her a great deal.' And then he said the next time we were together, he said—and talked over what he was going to do about mother—and he said 'I will tell you what I am going to do' he said 'I am going to make a will, if that will suit your mother, I am going to make a will and in that will I will provide for mother. Now, mother can have everything there is I have after I am dead and gone—'

"He said 'When you go back you ask your mother if she will be satisfied with me making a will and leaving

everything that is left to her. Tell her I am sick and I do not want to trouble about getting money. I may not live long. You tell your mother and write to me when you get back if she is satisfied with that.'"

That, on her return to Illinois, she told her mother what Neihoff had said relative to making her mother a beneficiary in his will, and that her mother expressed satisfaction with the offer and she so notified Neihoff. With this testimony in the record, counsel for respondent, at the close of his case in chief, moved to amend the complaint "to conform to the proof to show the promise and agreement was made in Bellingham for the making of the will." This amendment was allowed. Appellant then challenged the sufficiency of the evidence and interposed the bar of the statutes of frauds and of limitations, all of which being denied, the trial proceeded, resulting in a verdict and judgment for respondent.

We will first dispose of a motion to dismiss the appeal, made on the ground of failure to serve the sureties upon respondent's cost bond—she being a nonresident—with notice of the appeal. Appellant has filed in this court a waiver of any claim against the surety and has stipulated that the cost bond be cancelled. With such a record, the motion is ruled by *Roberts v. Pacific Tel. & Tel. Co.*, 93 Wash. 233, 160 Pac. 753, and is denied.

Under the relationship existing between respondent and the Neihoffs, the rendition of services of the character here disclosed implies no contract for compensation. The law presumes that, as between persons so related, the service was a gratuity, and before any recovery can be had, there must be proof either of an express contract or of facts and circumstances from which a contract for compensation may be implied. *Morrissey v. Faucett*, 28 Wash. 52, 68 Pac. 352; *McBride v.*

*McGinley,* 31 Wash. 573, 72 Pac. 105; *Hodge v. Hodge,* 47 Wash. 196, 91 Pac. 764, 11 L. R. A. (N. S.) 873; Elliott, Contracts, § 240.

Realizing such to be the law, respondent sought to meet it, first, by the testimony of Mrs. Schultz as to the promise made by the deceased at Danville, Illinois, in August, 1898. That this was the theory of the cause of action, prior to the amendment of the complaint, is further evidenced by the claim submitted to the administrator in order to meet the mandatory requirement of our statute that no holder of any claim against the estate of a deceased person shall maintain an action thereon unless the claim shall have been first presented to the executor or administrator. The claim filed by respondent is as follows:

## "Exhibit A

"In the Superior Court of the State of Washington in and for Whatcom County. In Probate.

"In the Matter of the Estate of William Neihoff, deceased. No. 2889. Claim of Sophia Zuhn.

"William Neihoff, deceased, debtor, to Sophia Zuhn, for seven years and five months services as nurse and housekeeper from August, 1898, to December, 1905, both inclusive, at the rate of $60 per month, amounting to ................................................$5,340

"The above mentioned and described services were performed by claimant for said William Neihoff and family under the express promise and agreement of said William Neihoff to provide for and support claimant and furnish her a home during the remainder of her life. That at the time the performance of said services ceased, as above set forth, said William Neihoff orally promised and agreed that, in consideration of said services so performed, he would make and execute his last will and testament and would name claimant in said last will and testament as his sole beneficiary and only heir, and that claimant relied upon said promise so made as aforesaid. That said William Neihoff failed to provide for claimant and furnish her

a home during the remainder of her life, and failed and
neglected to make and execute a last will and testament
and name the claimant as the sole beneficiary therein,
and wholly failed and neglected to in any manner com-
pensate or pay said claimant for any of the services
performed as hereinbefore set forth, and that the rea-
sonable value of the services performed by claimant as
hereinbefore set forth, is the sum of fifty-three hun-
dred forty dollars ($5,340).            Sophia Zuhn.
"State of Illinois, County of Vermillion, ss.

"Sophia Zuhn, being first duly sworn, on oath says,
that she is the claimant named in the above and fore-
going claim; that the amount thereof, to wit: the sum
of $5,340, is justly due; that no payments have been
made thereon, and that there are no offsets to the said
claim to the knowledge of said claimant.

"Sophia Zuhn.

"Subscribed and sworn to before me this 23d day of
February, 1916.            S. F. Schecter.

"Notary Public for Vermillion Co., Ill.,
"(Seal)            residing at Danville."

At the trial, for some reason, possibly to overcome
the bar of the statute of limitations, the Danville prom-
ise was abandoned and respondent sought recovery
upon the promise made at Bellingham in August, 1909.
This change presents the first claim of error, viz., that
the claim submitted to the jury, and upon which the
verdict and judgment rest, was never presented to the
administrator. It seems to us this claim of error must
be sustained. Respondent argues, in support of the
judgment, that the claim upon which respondent bases
her cause of action is the identical claim presented to
the administrator; and further, that, no objection being
made below upon this ground, none can be made for the
first time in this court. The fallacy of respondent's
first contention is in this. There can be no recovery for
the services rendered unless the presumption of a gra-
tuity is overcome by proof of either an express or an
implied contract to make compensation. The essential

feature of respondent's cause of action, then, is not the rendition of the services, but the oral agreement to make compensation. The services may be admitted without an admission of liability. The claim presented, upon which the action was brought, is based upon two promises made at Danville, Illinois; the first in August, 1898, to compensate for the services by providing respondent a home for life; and the second, made sometime after December 24, 1905, to execute a will in respondent's favor; while the contract submitted to the jury, on which the verdict and judgment rest, is one made at Bellingham in August, 1909. It is not enough to say that, the consideration for these agreements being the same, a claim filed with the administrator upon the first or second of these promises is a claim filed upon the third promise. Respondent urges further that it is sufficient if it appears that the suit is founded upon the same demand as that presented to the administrator. The demand presented to the administrator was the liability of the estate growing out of the oral promises made by William Neihoff in August, 1898, and in December, 1905. The demand in suit, under the allegations of the amended complaint, is the liability of the estate upon an oral promise made by William Neihoff in August, 1909. These demands are not the same, and notice of one is not notice of the other. *Etchas v. Orena,* 127 Cal. 588, 60 Pac. 45.

As to respondent's contention that appellant did not raise this objection in the court below, the complaint set forth a cause of action upon the promise set forth in the claim. There was, therefore, no opportunity to raise the question by any pleading, nor was there any necessity to object to any insufficiency in this respect until respondent abandoned the contract set forth in her complaint and referred to in her claim filed with the administrator. As soon as the respondent changed

her cause of action so as to base it upon the Bellingham promise, appellant challenged the sufficiency of the evidence to sustain the amended cause of action. This challenge would raise the question, as the filing of a claim is a mandatory precedent to any cause of action against the estate. The question also would be raised by appellant's motion for judgment notwithstanding the verdict.

The Danville agreement, relied upon by respondent, to support respondent and give her a home was breached and a cause of action arose upon it when the Neihoffs moved to Bellingham without fulfilling their contract. *Henry v. Rowell,* 31 Misc. Rep. 384, 64 N. Y. Supp. 488.

The action arising out of contract, express or implied, but not in writing, would fall within the three-year statute of limitations. More than three years elapsed between the breach and the making of the new promise in August, 1909. The statute is therefore a bar, unless the new promise is sufficient to avoid it. When the new promise was made, it created a new contract upon which, and upon which only, the action can be maintained. That new contract, like every other contract, must have the essential elements of a contract before it can be enforced. *Liberman v. Gurensky,* 27 Wash. 410, 67 Pac. 998; *Thisler v. Stephenson,* 54 Wash. 605, 103 Pac. 987.

The essential element of such a contract, under our statute (Rem. Code, § 176), is that the promise must be in writing. This new promise not being in writing, and the action being maintainable only upon the new promise, the action must fail. Respondent seeks to avoid this rule by contending that, notwithstanding the bar of the statute upon the first promise, "the original claim and cause of action furnished a sufficient consideration for the new promise." The trouble with

this contention is that it is not lack of consideration, but lack of contract, that bars respondent's right of recovery. There may have been ample consideration for the promise, but it cannot be enforced because the mandatory provision of the law requires such a promise to be in writing. A good consideration, of itself, does not make an enforcible contract. It is only one essential of such a contract. So with respondent's contention that the case falls within the rule of *Muir v. Kane*, 55 Wash. 131, 104 Pac. 153, 26 L. R. A. (N. S.) 519, that a moral obligation is sufficient to support a new promise. In that case the promise was a written promise and it was only necessary to find a good consideration to support the promise. When correctly applied, the rule announced in *Muir v. Kane* is admitted, but it has no application here for the reasons given, that, having no enforcible promise, it is not necessary to inquire whether there is a consideration or not. These reasons being sufficient to rule the case, it is not necessary to inquire into other questions discussed in the briefs.

Judgment reversed. Remanded with instructions to dismiss.

Ellis, C. J., Mount, Chadwick, and Holcomb, JJ., concur.