JUCKES v. ROGERS.

No. 34555. April 29, 1952.

Rehearing Denied July 15, 1952.

*246 P. 2d 335.*

Sam L. Wilhite and R. L. Lunsford III, Anadarko, for plaintiff in error.

McFadyen & McFadyen, Anadarko, for defendant in error.

PER CURIAM. Plaintiff, Rogers, presented a claim to defendant, Juckes, administratrix of the estate of Charlie Rogers, deceased, for services performed by plaintiff for decedent from November 11, 1944, to December 16, 1948, the date of his death. The claim was rejected and plaintiff instituted this action to establish it, upon a quantum meruit basis, pursuant to 58 O. S. 1941 §339. From a verdict and judgment for plaintiff, defendant appeals.

Plaintiff's husband was a brother of decedent, and for a great number of years she and her husband lived together with deceased and another brother on the farm of deceased. Deceased suffered total blindness early in life, but, except for total loss of his sight, was a man of good health. On November 11, 1944, plaintiff's husband died. Thereafter, and until death of decedent on December 16, 1948, plaintiff continued to live on the farm of deceased,

performing the work which is the subject of the present controversy.

The appeal is based on three contentions: (1) that there is insufficient evidence to support the verdict; (2) that there was error in admission of testimony of plaintiff that she had not been paid anything for such services by deceased; and, (3) misconduct of counsel in final argument.

There is little conflict in the evidence as to the nature and performanec of the work by plaintiff. The testimony shows that plaintiff performed the many usual duties of a farm woman, keeping the home in order, cooking, helping with the stock and in the field, and performed other duties in her work naturally attendant to the care and comfort of an active blind man. There is also evidence in the record to support a finding that decedent requested plaintiff to perform such services. Typical of such evidence is the testimony of a neighbor as follows:

"Well, when Mr. Rogers died, why he (Mr. Charlie Rogers) said, 'Our home is broke up,' and of course that is all Charlie said to me at that time, and Mrs. Rogers went home with her daughter who lives in Texas and was gone a few days, and when she returned in a few days I called on Mrs. Rogers, and the blind boy (Charlie Rogers) said, 'Jessie I have asked Audrey to stay on with us' and he said, 'We are very happy about it.' "

The issue decisive of the appeal is whether or not there exists in the record any competent evidence of such performance at decedent's request under circumstances from which a promise by decedent and expectation by plaintiff of payment for such services can be inferred. Over thirty witnesses were called and gave testimony tending to create or rebut such an inference. Direct evidence on this particular issue is limited by death of decedent and the disqualification of plaintiff to testify concerning transactions with decedent. We are of the opinion that the record as a whole is sufficient to support the verdict of the jury for plaintiff on this issue. In Colpitt v. Smith, 180 Okla. 627, 71 P. 2d 711, we said:

"It is a well settled rule that where there is any competent evidence reasonably tending to sustain a verdict, though the evidence be conflicting, and the cause is submitted to the jury upon instructions fairly stating the applicable law, the Supreme Court will not review the evidence, for the purpose of determining the weight thereof, and substitute its judgment for the judgment rendered on the verdict, and the verdict will not be disturbed on appeal."

We hold that there exists in the record competent evidence reasonably tending to sustain the verdict, and the above authority disposes of defendant's first contention on this appeal.

Defendant's second contention is that the trial court committed error in admitting testimony of plaintiff in violation of 12 O.S. 1941 §384, relating to testimony of transactions with a decedent. Plaintiff, over objection of defendant, was sworn and asked the single question as to whether or not she had been paid anything for her services rendered deceased. The trial court permitted plaintiff to answer that she had not. Such a contention was decided adverse to defendant in Chandler v. Chapman, 189 Okla. 108, 114 P. 2d 471, involving this precise issue, where we set out the applicable rule as follows:

"In connection with the last contention defendant complains that the trial court erred in permitting the plaintiff to testify that he had never been paid for the groceries or services furnished to decedent. The furnishing thereof had been established by other witnesses, and the trial court permitted plaintiff to so testify. We do not think the answer of plaintiff, which was in the negative, was violative of the rule announced in Pancoast v. Eldridge, 157 Okla. 195, 11 P. 2d 918. It did not tend to establish an implied contract between plaintiff and decedent, or relate to a transaction had by plaintiff with him. It was the very opposite of a transaction with the decedent. Ball v. Fleshman, 183 Okla. 634, 83 P. 2d 870."

Defendant also complains of misconduct of counsel in final argument in indicating to the jury that evidence as to certain mortgage transactions between plaintiff and decedent could not be shown because "the law has sealed her lips."

The record clearly shows that the court clarified the remark to the jury following defendant's objection and the matter was of little importance in the proof. It does not appear that substantial prejudice resulted from the remark nor that the jury was influenced thereby to the material detriment of defendant. Safe-Way Cab Service Co. of Oklahoma City v. Gadberry, 180 Okla. 51, 67 P. 2d 434; Clanton v. Mundell, 174 Okla. 428, 51 P. 2d 760; Safeway Stores v. Whitehead, 190 Okla. 464, 125 P. 2d 194.

The judgment of the trial court is affirmed.

This court acknowledges the services of Attorneys Arthur Ellsworth, Ted Elliott, and Edgar Fenton, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

WELCH, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. HALLEY, V.C.J., and CORN, J., dissent.

HALLEY, V.C.J. (dissenting). I am not unappreciative of the efforts of those who prepared the majority opinion, but I am firmly of the view that such opinion reaches the wrong conclusion.

In the first place, the trial court submitted to the jury the question of whether or not a family relationship existed between the plaintiff and the two brothers of her deceased husband, when the evidence shows conclusively that there was a family relationship, and there was no evidence to the contrary. For a definition of a "family" see In re Smith's Estate, 202 Okla. 302, 213 P.

2d 284. There was no question for the jury to pass upon.

In the second place, the opinion, while laying down a correct principle of law that "the presumption that the furnishing of necessary services to a relative is gratuitous in the absence of an express contract for payment therefor is a rebuttable one", fails to point out in the evidence where this presumption is rebutted, and the defendant in error's brief also fails to point out any such evidence, and after a thorough search I am unable to find any evidence that rebuts this presumption in the slightest degree.

Clearly the demurrer to the evidence should have been sustained.

I do not contend that simply because the plaintiff was the sister-in-law of the deceased and was living in his home, she must prove an express contract for compensation, although there is respectable authority to sustain such a view. See Hatfield's Estate, 50 Pa. Sup. 450; In re Patterson's Estate, 25 Pa. Dist. & Co. 364; Zuhn v. Horst, 100 Wash. 359, 170 P. 1033. I do maintain, however, that when the evidence shows —as in this case—that the plaintiff and defendant were living together in a family relationship, the plaintiff must prove facts and circumstances which rebut the presumption of gratuity which obtains in such cases. See Schultz v. Andrus's Estate, 178 Wis. 358, 190 N. W. 83, and 34 C. J. S., Executors and Administrators §371, p. 114.

The only semblance of testimony from which a contract could be inferred was that one witness testified that the blind brother said he wanted all that belonged to him to go to the plaintiff, and another witness testified that Charlie Rogers told her "that I told Audrey we would get busy and install us a bathroom so she could and we all could enjoy that now, and as to Audrey could have it after I am gone." The same witness, Mrs. Melencamp, testified that the blind brother, Charlie, made the statement after plaintiff returned from

a week's visit to her daughter in Dallas: "Jessie, I have asked Audrey to stay on with us", and "We are very happy about it." And then, on a leading question, the witness testified: "Yes, she agreed to stay on and he was very happy." I think that, as is said in 34 C. J. S., Executors and Administrators, §371, p. 108, decedent's mere expressions of gratitude or of a desire to compensate, or of an indefinite intention to compensate in the future, fall short of establishing a contract for payment. See Gayheart's Adm'r v. Gayheart, 287 Ky. 720, 155 S. W. 2d 1.

There also is no evidence whatsoever that these conversations were transmitted to the plaintiff. Even if these were enough, which they are not, that would have been necessary. See Kleinberg v. Kinealy, Mo. App., 193 S. W. 981.

There is no evidence that the plaintiff ever made any demand for compensation during the lifetime of the decedent, and the failure to do so raises a presumption that the services were gratuitous. See Logan v. Hite, 214 Ind. 233, 13 N. E. 702.

This is a law action, and we should not be concerned with doing equity. This old lady, the plaintiff, is no doubt a worthy person, but she did not do so badly in the little over four years that she lived with her brothers-in-law after her husband's death. She had a home which she enjoyed, her flock of chickens and herd of cattle, the companionship of men to whom she was devoted, and the independence and dignity that came from doing what she wanted to and rendering service. In addition, she received a gift of $1,600; and her children will inherit one-fourth of the estate of Charlie Rogers. But all this is beside the point, for under the evidence she was a member of the family of the Rogers brothers and performed her services without the promise or expectation of a reward. I think that a reading of secs. 371(a) and (b) (5); 452(d) (2); 784(a) (2) (b); 784 (b) (3) (b); 785(b) (2);

786 (b) (3); and 788, in 34 C. J. S., Executors and Administrators, and some of the cases cited thereunder, will convince one that the majority opinion is wrong. I dissent.