36 N.J. Super. 556 (1955)
116 A.2d 650
RED BANK HUDSON, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
PAWTUCKET MUTUAL INSURANCE COMPANY, A RHODE ISLAND CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided August 25, 1955.
*558 Messrs. Stoffer and Jacobs, attorneys for plaintiff.
Messrs. Lum, Fairlie & Foster, attorneys for defendant.
WAUGH, J.C.C. (temporarily assigned).
The parties to this action agreed that it should be determined by the court upon a stipulation of facts.
The action is a suit upon an insurance policy in which the defendant insured automobiles of the plaintiff, plaintiff being a car dealer. The pertinent provision of the policy; to wit, the property covered, reads as follows:
"The Policy covers automobiles consigned to or owned by the Insured and held for sale or used in the insured's business as an automobile dealer including repair service or as demonstrators but *559 excludes automobiles sold by the Insured under bailment lease, conditional sale, mortgage or other type of encumbrance. Automobiles consigned to or owned by the Insured which are subject to a trust agreement, bailment lease, conditional sale, mortgage or other type of encumbrance are not covered hereunder unless specifically so indicated below."
On October 9, 1954 the plaintiff negotiated with one Hoffbauer for the sale of a car which "was at that time owned free and clear by the plaintiff." "The terms of the agreement contemplated a down payment of $495.00 and payment of the balance by conditional sale."
The stipulation of facts sets forth that
"As the local office of the motor vehicle agency was closed (it being Saturday afternoon) there was no transfer of the certificate of ownership. Plaintiff agreed with Hoffbauer to accept $100.00 toward the down payment, permitted Hoffbauer to use the car over the weekend with plaintiff's dealer plates and arranged to meet 9:30 A.M. on October 11th, 1954 (Monday morning) at the Motor Vehicle Agency, at which time Hoffbauer was to pay the balance of the down payment, certificate of ownership was to be transferred and the registration and license plates issued to Hoffbauer. The Conditional Sales Contract signed by Hoffbauer was retained by plaintiff together with the certificate of ownership.
At 2:30 A.M. Sunday morning, October 10, 1954, the said automobile while driven by Hoffbauer overturned. Hoffbauer was killed and the automobile totally destroyed." Damages are stipulated at $900.00.
"Prior to the sale a finance company had agreed to finance the purchase by Hoffbauer and included in the cost of finance was collision insurance. * * * Said insurance never took effect as the final papers were never approved and no payments were made nor a policy issued, insuring the automobile in question."
The conditional sales contract, dated October 8, 1954 fully executed, completely filled out is attached to the stipulation of facts. Monthly payments were to commence November 8, 1954.
Plaintiff claims that the sale between it and Hoffbauer was never consummated, that it owned the car and that it was covered by the general policy with the defendant. Defendant urges that the destroyed automobile had been sold *560 thus bringing it out of the jurisdiction of the contract of insurance inasmuch as the contract specifically excludes automobiles which had been sold.
Clearly, under the insurance policy here involved, plaintiff is without remedy if the car had been sold to Hoffbauer. Plaintiff must sustain the burden of proof by the preponderance of the evidence that the car had not been sold to Hoffbauer.
The Conditional Sales Act (R.S. 46:32-1 et seq.) indicates that a conditional sale has taken place when the appropriate contract is signed and possession of the goods is transferred (R.S. 46:32-2). It is stipulated here that Hoffbauer signed the contract on Saturday afternoon and it is further stipulated that possession of the Hudson automobile was transferred to Hoffbauer.
But plaintiff asserts these two reasons for its argument that no sale took place:
1. It argues that the provisions of R.S. 17:16B-6 were not followed and hence there could have been no sale. That statute requires that the vendor in a conditional sales situation either (a) deliver a copy of the conditional sales contract to the buyer within five days of the sale, or (b) give the buyer a statement of all the important terms of the contract at the time of the sale.
2. It argues that because $395 of the $495 deposit was to be withheld until the time of the title transfer Monday morning, the parties did not intend to consummate the sale Saturday afternoon.
As to 1, it is stipulated that no copy of the contract was given Hoffbauer; however, assuming Saturday to be the date of the sale, if any, still five days had not passed at the time of the accident. It follows that the first part of the statute had not been violated. The stipulation of facts does not tell us whether or not a statement of the sale was given Hoffbauer that Saturday afternoon. Since plaintiff has the burden of persuading the court that no sale took place be must prove by a preponderance of the evidence that no statement was given. This he has failed to do. In the face of *561 the stipulation's silence we can only assume that such a statement was indeed given Hoffbauer and that thus compliance was had with the statute. Defendant is, of course, under no burden to prove the existence of a sale and thus he need not show that a statement of sale was given to Mr. Hoffbauer.
As to 2, the court may draw an inference that the parties intended no consummation of the sale until Monday morning from the stipulated fact that $395 of the down payment was to be withheld until Monday morning's transfer of title papers.
The court may draw an equally strong inference that by transferring possession of the car, plaintiff intended to consummate the sale on Saturday afternoon. The stipulation is so drawn as to require the trier of facts to determine credibility without ever seeing or hearing a witness. The court infers that the controlling reason for failure to transfer the certificate of ownership was that the motor vehicle agency was closed. The conditional sales contract was executed  it had been approved by the finance company. It recited the payment of $495 and called for the first monthly payment on November 8, 1954. It would appear that Hoffbauer had the $495 and was not going to raise it over the weekend. In the face of conflicting inferences, and without the benefit of hearing and seeing witnesses, the court is not convinced that there was no sale of the Hudson car to Hoffbauer.
The plaintiff contends that its position on the sale to Hoffbauer is supported by the failure of plaintiff to comply with the provisions of the Motor Vehicles Act (R.S. 39:10-9; 39:10-10), requiring transfer of certificate of ownership and that therefore there could have been no sale of the car.
We believe that, under these facts, the failure to comply with the statute did not affect the nature of the legal relationship between plaintiff and Hoffbauer. In this regard reliance is placed upon Ethridge v. Allied Equipment & Supply Co., 26 N.J. Super. 586 (App. Div. 1953). There plaintiff agreed to sell a trailer to defendant for $700. $300 was paid when the contract was made, the "balance of $400.00 *562 to be adjusted upon transfer of title and delivery of the above-mentioned trailer." Then possession of the trailer was transferred without payment of the $400 and without transfer of the title papers. Hours later, defendant informed plaintiff he did not wish to keep the trailer and demanded the return of his deposit. Plaintiff refused, sued for the balance, and recovered. The court said that where there was no intention to evade the statute requiring the seller of used motor vehicles to execute and deliver an assignment of the certificate of ownership, and the parties contemplated prompt execution and delivery of the prescribed title papers, the transaction would not be considered as void merely because the papers had not been delivered at the moment the bargain was struck or when the buyer took possession of the vehicle.
In the present case the buyer and seller planned to transfer the title papers first thing Monday morning. This court finds as a matter of fact that there was no intent to evade the statute.
Plaintiff asserts that under the facts given he is entitled to judgment as a matter of law. He cites the case of Rash v. North British & Mercantile Ins. Co., 246 S.W.2d 990 (Ky. Ct. App. 1951). There defendant insured plaintiff under the same policy clause as is involved here. Then buyer signed a conditional sales contract and paid $50 of an expected $500 down payment. He was given possession of the car so that he could drive to another state to obtain the remainder of the down payment. Before he returned with the cash, the auto was involved in a collision. Dealer recovered under the policy. The court held that the sale was never consummated even though the contract was signed. It concluded that the parties did not intend consummation by the reasoning that insurance contracts are made with knowledge of trade practices and that it is an auto trade practice to transfer cars to buyer "to try out" and "for testing and demonstration." There was no evidence in the Rash case that the car was given to buyer "to try out" nor is there any evidence of that in the case at bar. Further, in New Jersey the court cannot make assumptions nor take *563 judicial notice of alleged trade practices. In Johnson v. Hoffman, 7 N.J. 123, 133 (1951), our Supreme Court said:
"Where a custom is relied on to explain a contract, it must be specially pleaded * * * or be included by the pretrial order by amendment to the pleadings. * * * This is particularly true where the custom is relied on to aid in the interpretation of the contract or to explain the terms of the contract where permitted under the parol evidence rule. * * * The alleged custom, if pleaded, must then be clearly established and must be known to the parties or be so notorious in the trade as to charge them with notice thereof."
These directions were not followed here. Under these circumstances we cannot follow the decision in the Rash case.
Plaintiff further relies upon Bisi v. American Automobile Insurance Co., 137 Conn. 424, 78 A.2d 533, 535, 23 A.L.R.2d 787 (Sup. Ct. Err. 1951). In that case plaintiff dealer was insured under a clause substantially the same as the one involved here. Subsequently dealer entered negotiations with one Finch to conditionally sell an automobile. A contract was signed and a down payment was made except that $50 was reserved to be paid when dealer succeeded in negotiating the conditional sale contract and note to an automobile finance company and thereby obtain the balance of the purchase price. It was agreed that only then would the sale be consummated. Dealer allowed Finch the use of the car over the weekend when the collision occurred. The court stated:
"* * * an executory agreement to make a conditional sale becomes executed so that the vendor no longer holds the car for sale only when possession is delivered pursuant to the conditional sale. Delivery for any purpose other than to complete the executory agreement does not execute that agreement. * * *
The real question in the case, therefore, is whether the delivery of possession of the car by the plaintiff to Finch was a delivery in pursuance of the executory agreement for a conditional sale. That is a question of intent."
The court then goes on to discuss the effect of a nondelivery of a copy of the contract to Finch. It mentioned also the *564 fact that dealer "allowed" Finch to use the car over the weekend as a favor  that Finch had no claim of right to possession. The court then concludes that the parties had not intended to consummate the sale.
The court first finds as a fact that the parties agreed not to consummate the sale until the finance company approved the loan. After stating that fact it proceeds to analyze the facts to determine whether the parties intended to execute the contract. We have no doubt but that the controlling fact was the agreement to postpone consummation of the sale until financing had been arranged. In that case there can be no doubt but that the parties never intended execution of the agreement.
In the case at bar, the plaintiff has not proven that there was no intent to execute the sale. That being so, there must be a judgment for the defendant.