George RICKER, Jr., Executor of the Estate
of G. W. Ricker, Deceased, Plain-
tiff in Error,

v.

Opal BALL, Defendant in Error.

No. 41225.

Supreme Court of Oklahoma.

March 22, 1966.

Drennan and Drennan by J. C. Drennan, Medford, for plaintiff in error.

Ellis W. Eddy, Medford, Roy W. Cox and Charles C. Buhrman, Blackwell, for defendant in error.

BLACKBIRD, Justice.

This is an appeal by George Ricker, Jr., executor of the estate of G. W. Ricker, deceased, (defendant below) from an adverse verdict and judgment of the District Court of Grant County, Oklahoma, in favor of Opal Ball (plaintiff below). The parties will be referred to herein as they appeared in the trial court.

The plaintiff alleged that she had worked for the deceased from January 1, 1930, until his death on March 29, 1963, doing general housework and other work in connection with the operation of a farm. For her services, she filed a claim against the deceased's estate in the amount of $31,175.-00, which was disallowed by defendant, thus provoking this suit. In the defendant's answer, he alleged that the plaintiff had been raised by the deceased as a daughter; that the plaintiff had been furnished a home, medical care and spending money, and thus had been completely compensated for any services she might have rendered the deceased. The jury returned a verdict in fa-vor of the plaintiff in the amount of $10,-000.00.

For reversal, defendant contends that the evidence is insufficient to support the verdict, and that the trial court erred in refusing to give certain requested instructions.

The testimony showed that when the plaintiff was nine years old, she and her brothers and sister were brought from the Odd Fellow's Home at Carmen, Oklahoma, into the home of the deceased, when the plaintiff's mother and the deceased were married. When the plaintiff was 19 years old, her mother and the deceased were divorced. About this time, plaintiff left the deceased's home and went to work in the home of people named: "Gillispie". She worked at the Gillispie home for a short time and then returned to the deceased's home. How long she worked at the Gillispie home was in dispute, but she worked there some period between two days and two weeks. Plaintiff lived and worked at the deceased's home at all times between the years 1930 and 1963. She did all the usual household chores in and around a farm home, and helped rear the children in deceased's home. Several witnesses testified in plaintiff's behalf, stating the nature and value of the work she did around the home during the various periods they observed her and the deceased. Witnesses for defendant testified that plaintiff was always treated as a member of the family, and not as an employee. Other witnesses testified that they recognized her as a housekeeper; and there was testimony that deceased "allowed" plaintiff "$700.00 per year for income tax to build up Social Security."

Defendant contends that the evidence in this case shows that the deceased treated plaintiff as a daughter and that a family relationship existed in his home, hence there is a presumption that her services were rendered gratuitously.

We have heretofore had occasion to examine cases involving a defense of family relationship such as in the instant case.

In Hapke v. Hapke, 93 Okl. 180, 220 P. 660, we reversed the judgment of the trial

court in favor of the plaintiff where she claimed compensation for services rendered her father. We held that services of a child, even after attaining majority, are gratuitously rendered, absent an agreement to the contrary, and statements by the father, that the daughter should be compensated for her services, are not sufficient to establish an agreement for compensation.

In Eatmon v. Penland, 119 Okl. 180, 249 P. 387, the plaintiff brought an action upon a promissory note against the administrator of his mother's estate. The plaintiff contended that the note had been executed by his mother in payment for work he had done for his parents some fifteen years back, after he had reached majority. The plaintiff urged as error, the trial court's instructions which stated, in part, that where a child remained with his parents after reaching his majority and continued his family relations, and he rendered services to his parents thereafter, the law presumes that such services were gratuitously rendered, and the parents would not be liable therefor unless it is shown that there was an express contract to pay for such services. We held that the instructions were correct.

In the case of In re Smith's Estate, 202 Okl. 302, 213 P.2d 284, we held that a family relationship did not exist where the wife of a nephew had rendered services to her husband's uncle, W. W. Smith (against whose estate the claim was filed). W. W. Smith lived next door to the nephew and claimant. The claimant did W. W. Smith's laundry, served him all his meals, and cleaned his house for him.

In Juckes v. Rogers, 206 Okl. 663, 246 P.2d 335, we sustained the judgment in favor of the plaintiff for services rendered to the deceased. The evidence showed that the plaintiff and her husband lived with the husband's brother (the deceased). The brother was blind. The plaintiff's husband died and the plaintiff continued to live in the house with her husband's blind brother and cared for him approximately four years. We did not discuss the family relationship

in the majority opinion, but the dissent filed therein points out that the issue of family relationship was submitted to the jury. We held that the judgment of the trial court was supported by competent evidence.

In Mosley v. Mosley, Okl., 321 P.2d 421, we held that the family relationship did not exist where a sister cared for her brother for four or five years. The brother was in ill health and lived in an apartment which the sister owned.

In Simmons v. Simmons, Okl., 357 P.2d 949, we affirmed the judgment of the trial court allowing two sisters compensation for care and support of their father, who was in ill health. One of the sisters was a school teacher who lived with her father. The other sister would leave her home and go to the father's home and care for him during the day while the other sister was teaching school.

We have heretofore defined the term "family" in the case of In re Smith's Estate, supra, as "a collective body of persons, who form one household, under one head and one domestic government, and who have reciprocal natural or moral duties to support and care for each other."

Though the plaintiff had been reared in the home of the deceased since she was nine years old, she was in no way related to him. The plaintiff's mother and the deceased were married for a few years, but when they were divorced, plaintiff left the home of the deceased and obtained employment at the Gillispie home. Shortly thereafter, plaintiff returned to the home of the deceased and remained there for a period of over thirty years.

■ The question of whether a family relationship existed between the plaintiff and deceased was submitted to the jury and was decided adversely to the defendant. It is proper in such cases to submit that question to the jury. Chandler v. Chapman, 189 Okl. 108, 114 P.2d 471.

■ In Colpitt v. Smith, 180 Okl. 627, 71 P.2d 711, we held:

"Where there is any competent evidence reasonably tending to sustain a verdict, though the evidence be conflicting, and the cause is submitted to the jury upon instructions fairly stating the applicable law, the Supreme Court will not review the evidence, for the purpose of determining the weight thereof, and substitute its judgment for the judgment rendered on the verdict.

■ We hold that there exists in the record competent evidence reasonably tending to sustain the verdict, and the above authority disposes of defendant's first contention on this appeal.

■ The other proposition argued by the defendant is that the trial court erred in not giving two requested instructions. The first requested instruction is as follows:

"You are further instructed that services rendered by a person standing in loco parentis are presumed to have been rendered gratuitously. The law does not imply a promise to pay therefor, and there can be no recovery therefor from the estate of the decedent without an agreement for compensation. This presumption is rebuttable. Unless you find by a preponderance of the evidence that plaintiff has rebutted this presumption, then you must find for the defendant."

We fail to see the materiality of the above instruction. This is not an action by a person standing in loco parentis. To have given this instruction would probably have confused the jurors.

■ The other instruction which the defendant requested is as follows:

"You are further instructed that unless you find by a preponderance of the evidence that the plaintiff ever made any demand for compensation during the lifetime of the decedent, that there is a pre-sumption that the services rendered were gratuitous."

From a review of the instructions given, we find the trial court gave the following instruction, which we deem to be a substantially correct statement of the law:

"You are further instructed that where a claimant sues the executor of an estate on an implied contract to recover for the value of personal services rendered after the decedent's death and where it appears from the evidence that the claimant never made any demand for compensation on the decedent during his lifetime, there is a presumption of law that such services were rendered by said claimant gratuitously. However, in this connection, you are instructed that if you find and believe from a preponderance of the evidence that said decedent had promised, during his lifetime, either expressly or impliedly, that he intended to pay for such services and that claimant expected to be compensated therefor, then and in such event the presumption that such services were to be gratuitous is overcome and the claimant would be entitled to recover for the reasonable value of such services, the time in which such recovery could be had being governed by the other instructions herein given you relating to the statute of limitations.

■ We have carefully reviewed the instructions given by the trial court and those requested by defendant. It is our conclusion that the instructions given fairly instructed the jury on the law as brought into focus by the pleadings and evidence and that it was not error to refuse to give the defendant's requested instructions. Where the instructions, when considered as a whole, and in the light of the evidence on which they operate, fairly instruct the jury as to the law applicable to the issues made, the verdict and judgment rendered will not be disturbed on appeal.

The judgment is affirmed.