HARDWARE MUTUAL CASUALTY COM-
PANY, a Foreign Insurance Corpora-
tion, Plaintiff in Error,

v.

K. B. BAKER, Individual d/b/a Baker Mo-
tor Company, Defendant in Error.

No. 41580.

Supreme Court of Oklahoma.

Sept. 24, 1968.

Ben A. Goff, Oklahoma City, for plaintiff in error.

Woodrow McConnell, Oklahoma City, for defendant in error.

WILLIAMS, Justice.

This is an appeal from a judgment of the court below, sitting with a jury, in an action brought by plaintiff, defendant in error herein, to recover, under the provisions of an insurance policy issued to him by defendant, for a loss sustained on a certain automobile allegedly owned by plaintiff. On appeal, the parties will be referred to as they appeared in the trial court.

In his petition filed below, plaintiff alleged that on August 24, 1963, he was the owner of a 1963 Chevrolet Corvette automobile; that on such date, the Corvette automobile was stolen and was subsequently discovered burning near Oklahoma City; that at the time of theft of this automobile, an insurance policy issued by defendant to plaintiff was in full force and effect; that defendant, through its agents and employees, took possession of the burned automobile and sold it as salvage for the amount of $152.50; and that defendant, although notified of the loss, has refused plaintiff's demand for the payment of $4500, which sum was the reasonable value of the automobile at the time of its loss.

Attached to plaintiff's petition was a copy of an insurance policy issued by defendant to plaintiff, K. B. Baker, dba Baker Motor Company. This policy, entitled "Dealers Automobile Policy", was issued June 1, 1963, for a term of one year.

Defendant answered by general denial but admitted it had issued the insurance policy attached to plaintiff's petition. In addition to its general denial, defendant specifically denied that plaintiff was the

owner of or had an insurable interest in the Corvette automobile at the time it was stolen; that it had any knowledge concerning the facts and events surrounding the fire to the automobile; that through its agents or employees it took possession of the burned automobile (in connection with which denial, defendant alleged that after plaintiff had made false representations concerning the ownership of the automobile, plaintiff was informed defendant would not recognize the loss and that the Corvette was thereafter sold for salvage pursuant to a request by plaintiff and the proceeds of such sale were forwarded to plaintiff); that the sale of the automobile for salvage was a waiver of any of the provisions or conditions of the insurance policy; that plaintiff had filed a proof of loss with defendant within the time provided in the insurance policy; that the reasonable value of the automobile was $4500; and, that the "reasonable value" of the automobile was the proper measure of damages on the ground such term embraced prospective profit and overhead charges which were excluded by the policy.

In reply to defendant's answer, plaintiff filed a general denial.

At trial, plaintiff testified that at the time the cause of action herein arose he was an automobile dealer in Healdton, Oklahoma. Plaintiff stated that on August 23, 1963, he purchased, for re-sale in his automobile business, a used 1963 Corvette automobile from a Mrs. Mae Payne for the consideration of the payment of $2500 in cash and the agreement to install nine refrigerated window unit air conditioners in a motel owned by Mrs. Payne. From the evidence submitted, this 1963 Corvette automobile allegedly purchased by plaintiff was apparently four months old and had been driven approximately 6,000 miles. According to plaintiff's testimony, at the time of purchase Mrs. Payne executed, in his presence, the assignment of the certificate of title to the Corvette automobile. A certificate of title covering a 1963 Corvette registered to a Mae Payne was admitted into evidence. An undated blank assignment, not sworn to, appearing on the reverse side of this certificate bore the purported signature of a Mae Payne.

Plaintiff also stated that at the time of purchase Mrs. Payne's son requested his (plaintiff's) permission to borrow the automobile for one day to drive to Oklahoma City and that this permission was granted. Thereafter, on the evening of August 24th, plaintiff was informed that the Corvette had been stolen and had been found burning in Oklahoma City.

Plaintiff further testified that on August 25th he telephoned defendant's offices in Oklahoma City and reported the loss sustained from the theft and burning of the Corvette. Plaintiff stated that subsequent to first reporting the loss, he telephoned defendant on other occasions and discussed the loss; that on these other occasions, he talked to several employees of defendant, one of whom he remembered to be a Mr. Eldridge; that during one telephone conversation, he was asked permission by defendant to sell the Corvette for salvage and this permission was granted; and, that he subsequently received from defendant a check for the amount of the salvage. This check, which was issued by a salvage company to defendant and was endorsed payable to plaintiff by defendant ("Hardware Mutual by David Eldridge * *"), was introduced into evidence.

At this point, it should be noted that David Eldridge, a claim adjustor employed by defendant, testified at trial that he had never spoken to plaintiff concerning the loss of the Corvette, but admitted, although stating that he did not remember the occurrence, that the endorsement on the above-mentioned check introduced into evidence was his signature.

As to the value of the Corvette, plaintiff testified that he paid $4500 for the automobile. However, on cross-examination he stated that he had paid $3750 for the car and that he had intended to sell it for $4500 or more.

One other witness, a former employee of plaintiff testified that he was present when

plaintiff purchased the 1963 Corvette from Mrs. Payne and saw Mrs. Payne execute the assignment of the certificate of title. He further testified that immediately following the purchase, he (witness) took the Corvette to plaintiff's place of business, washed and cleaned it, and returned it to Mrs. Payne for use by her son.

Defendant introduced into evidence the deposition of one Otha McGlassen, a business associate of plaintiff at the time the controversy herein arose. In this deposition, McGlassen testified, inter alia, that he had been informed by plaintiff several days after the alleged purchase of the Corvette that plaintiff had not in fact purchased the car from Mrs. Payne, but as Mrs. Payne did not have insurance on the Corvette, plaintiff had taken the title to the automobile for the purpose of collecting for the loss under plaintiff's insurance.

Defendant also introduced the testimony of an expert witness as to the value of the Corvette at the time of the loss. This witness testified that the wholesale value of such automobile at time of loss was approximately $3600 to $3800 and that the original retail price of the car when new was somewhere between $5000 and $5300.

At the close of the evidence, both parties moved for a directed verdict. The trial court overruled both motions. The cause of action was then submitted to the jury which returned a verdict for plaintiff in the sum of $4000, less salvage value of the Corvette. This salvage value was $152.50.

From the judgment entered on the jury verdict, and from an order of the trial court overruling a motion for new trial, defendant appeals.

In its first proposition for reversal, defendant contends that the automobile involved herein did not come within the provisions of the insurance policy issued by defendant to plaintiff. To support this contention, defendant quotes the following provision of the policy:

"The insurance afforded applies only to the types of automobiles and interests therein indicated in the Declarations of the policy and provided such automobiles are:

(1) held by the insured for sale or used in the insured's business or a garage including repair service or as demonstrators but excluding automobiles leased or rented to others and automobiles sold by the insured subject to any security interest of the insured; * * *."

The basis of this contention by defendant is that an automobile loaned by plaintiff was not being "held by the insured for sale" so as to be within the above quoted provisions.

Defendant cites several authorities from other jurisdictions, one of which is Hunter v. Royal Ins. Co., 209 App.Div. 15, 203 N.Y.S. 833 (App.Div.). In *Hunter*, defendant insurance company argued that a car owned by plaintiff dealer but loaned at the time of loss to an employee of plaintiff did not come within a provision of the policy similar to the above quoted provision. The New York Court refused to accept this argument on the ground that an interpretation of a provision requiring cars to be "on sale" or "for sale" would be dependent on the custom of the trade and this had not been proved in the case. However, the court therein did hold that the loaned automobile was not within the provisions of the policy on the ground that such automobile was not in the "possession" of the plaintiff dealer as required by another provision of the insurance policy.

In Rash v. North British & Mercantile Ins. Co., Ky., 246 S.W.2d 990, the court approved the statement in *Hunter*, supra, that the term "held for sale" in a dealer's automobile insurance policy was to be interpreted in light of the general practices and customs of the trade. The court then held that it was "common knowledge" that an automobile dealer loaned cars to prospective purchasers to drive and that an automobile so loaned was within the policy provision requiring a dealer's automobile to be held for sale.

In Red Bank Hudson, Inc. v. Pawtucket Mutual Insurance Co., 36 N.J.Super. 556, 116 A.2d 650, the court stated that a dealer's automobile policy could be interpreted in light of the customs of the trade, but refused to apply the principle where the custom or practice was not pleaded or established.

In our opinion, none of the above authorities are of any aid to defendant herein. The opinion in *Hunter*, supra, was predicated, as stated above, on a policy provision requiring the dealer to be in possession of the automobile and on the court's interpretation of what constituted possession. In the instant case, defendant has not called to our attention any provision of the insurance policy which required plaintiff to be in "possession" (regardless of how that term might be interpreted) of the Corvette to entitle the insured to recover for its loss.

■ This Court has previously held that evidence of a particular custom is admissible if the custom was pleaded and if the contract provision is indefinite and ambiguous. See Sooner Broadcasting Co. v. Grotkop, Okl., 280 P.2d 457. However, defendant herein not only did not plead any custom in the trade pertinent to the question of whether an automobile loaned by a dealer was an automobile held for sale by the dealer, but it also did not seek to introduce any evidence relative to such question. Therefore, in our opinion, the question of whether a loaned automobile was covered by the insurance policy herein was to be determined by the language of the policy provisions.

■ The provision of the policy involved herein which was quoted above does not include within its exclusions any reference to loaned automobiles and defendant has not directed us to any other provision of the policy which would exclude from coverage such automobiles. As insurance policies are to be strictly construed against the insurer, it is our opinion that the loaned automobile, as not specifically excluded by the terms of the policy, was covered if plaintiff owned the Corvette involved herein and if he had purchased it for resale in his automobile business. A finding that plaintiff purchased the Corvette for resale in his business is inherent in the jury's verdict for plaintiff, and, in our opinion, this finding is amply supported by the evidence.

■ In its second proposition for reversal, defendant contends that the trial court erred in various instructions given to the jury. In summary, defendant argues that the instructions (both as to certain specified instructions and as to the instructions generally) failed to properly instruct the jury on the question whether plaintiff owned the automobile; on the question whether plaintiff held the automobile within the provisions of the policy specifying the conditions of insurance coverage; on the question of damages; and, on the question of when the title of the Corvette passed to the plaintiff.

Instructions of a trial court are to be read as a whole and in light of the evidence upon which they operate. Ricker v. Ball, Okl., 412 P.2d 961. Applying this principle to the instructions and evidence herein, it is our opinion that the trial court did not fail to properly instruct the jury.

■ In its third proposition, defendant argues that the trial court erred in admitting into evidence the certificate of title on the ground it was void because the purported signature of Mae Payne had not been sworn to before a notary public as required by 47 O.S.1961, § 23.6. However, in Als Auto Sales v. Moskowitz, 203 Okl. 611, 224 P.2d 588, 591, we held that 47 O.S.1961, § 23.6 " * * * does not expressly provide that sales made without complying with the requirements shall be void and a violation of said act does not invalidate the sale or prevent title from passing." In Williams v. Williams, Okl., 274 P.2d 359, 362, this Court, with reference to the transfer of title to an automobile, held that "(a) valid passing of title (ownership) may be accomplished without it." For these reasons, and the further one

that the trial court instructed the jury that the certificate was not necessarily controlling in determining the ownership of the automobile, we do not agree with defendant's contention.

Defendant further argues that the trial court erred in admitting into evidence plaintiff's testimony concerning his alleged telephone conversation with David Eldridge, an employee of defendant. Defendant contends that as this testimony was the only evidence introduced as to the manner in which the loss occurred, then if such evidence was improperly admitted, plaintiff failed to prove an essential element of his cause of action.

However, this contention fails to take into account other evidence submitted below and the trial court's instructions. As noted earlier herein, plaintiff testified he spoke by telephone to several of defendant's employees, one of whom was David Eldridge. Plaintiff also introduced a check from a salvage company payable to defendant which had been endorsed by defendant to plaintiff. In its instruction number five, the trial court submitted to the jury the question whether defendant's actions had constituted a waiver of a formal written proof of loss. Although at trial defendant objected to the form of the instruction, it does not argue this objection in its brief on appeal. In our opinion, this issue of the manner in which the loss occurred was properly submitted to the jury and error, if any, in admitting the evidence concerning the Eldridge telephone conversation was harmless.

In its third proposition, defendant also contends that the trial court erred in excluding certain testimony of witness Otha McGlassen. From the record, it appears that the excluded testimony was either cumulative or concerned the impression witness had obtained from alleged statements made to him by plaintiff's attorney. In our opinion, the exclusion of such testimony was not prejudicial.

In its fourth proposition, defendant argues the Corvette automobile was not owned by plaintiff, or if so owned, was encumbered and plaintiff had only a $2,500.00 equity in it. Suffice it to say that these matters were in effect submitted to the jury and a verdict was returned for plaintiff.

However, we do agree that the amount of the verdict is not fully supported by the evidence. Plaintiff, on several occasions admitted that he had paid approximately $3,750 for the Corvette. Defendant's expert witness testified that the wholesale value of the Corvette at the time of loss was approximately $3,600 to $3,800. In our opinion, this evidence, in view of plaintiff's own testimony, would support a judgment of not more than $3,750. The trial court's judgment is therefore modified to $3,750, less salvage as agreed upon.

The judgment of the trial court, as modified, is affirmed.

The case made includes a copy of a supersedeas bond executed by the defendant, as principal, and Transamerica Insurance Company, a corporation, as surety. Pursuant to the provisions of 12 O.S. 1961, § 971, judgment is hereby rendered against said Transamerica Insurance Company, in favor of the plaintiff in the trial court, K. B. Baker, an individual, doing business as Baker Motor Company, in the principal amount of $3597.50, together with interest at the rate of six per centum (6%) per annum from the 17th day of December, 1964, until paid, and all costs of the action in the trial court and one-half of the costs of this appeal; and the trial court hereby is directed to enter and enforce this judgment against said surety as if rendered in that court.

JACKSON, C. J., IRWIN, V. C. J., and BLACKBIRD, HODGES and LAVENDER, JJ., concur.

DAVISON, J., concurs in result.

BERRY and McINERNEY, JJ., dissent.